# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

ANTHONY P. PERRY,        )
                        )
        Plaintiff,      )
                        )
v.                    )     Case No. 1:19-CV-470
                        )
UNIVERSAL DEDICATED INC.,  )
                        )
        Defendant.    )

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendant Universal Dedicated, Inc.[1], ("Universal") on February 3, 2020 (ECF No. 47). Plaintiff Anthony Perry filed a response in opposition on March 5, 2020 (ECF No. 51) and Universal filed a reply brief on March 19, 2020 (ECF No. 54). For the reasons explained below, the motion is GRANTED.

**I. Background.**

Anthony Perry, who is African American, alleges that Universal, his former employer, discriminated against him on the basis of his race in violation of Title VII. Complaint (ECF No. 7), pp. 1-3. He filed a Charge of Discrimination against Universal on May 1, 2019 (*id*., p. 5, Exh. A) and the EEOC issued a Notice of Right to Sue letter on August 5, 2019 (*id*., p. 6, Exh. B). In addition to Universal, Perry named as a defendant the "Chauffeurs, Teamsters and Helpers-

---

[1] Perry initiated this lawsuit in state court and Universal removed it to this Court pursuant to 28 U.S.C. § 1331. In its Notice of Removal, Universal explains that its corporate name is "Universal Dedicated of Fort Wayne IN, LLC" and that it was "incorrectly named in the caption as Universal Dedicated, Inc." Notice of Removal (ECF No. 1), p. 1. The Court refers to Defendant in this order as "Universal."

Roanoke . . . Local Union No. 414." *Id.*, p. 1. On February 12, 2020, this Court granted a motion

to dismiss filed by the Union and dismissed "any and all claims asserted against the Union[.]"

Court Order (ECF no. 24), p. 1. Universal, then, is the only remaining defendant.

Perry began working for Universal on January 10, 2019. The relevant allegations in the

Complaint–that is, the allegations against Universal only, ignoring those asserted against the

Union–are as follows:

> On February 10, 2019, plaintiff's supervisor, Josh Yohe (white male) informed
> plaintiff that he was not qualified to work for defendants because plaintiff has
> another job. Plaintiff is unaware of other employees, outside of his race, that have
> other jobs and was not told of this [sic]. From that day on, plaintiff has been
> continually harassed about resigning and threatened to be terminated if he did not
> resign from one of his jobs. On March 27, 2019, Bruce (last name unknown)
> (white male) told plaintiff that plaintiff would be going from a k-2 shuttle driver
> to an extra driver. On April 24, 2019, plaintiff was told there was no work to do,
> so plaintiff was sent home early. Plaintiff is not aware of anyone else that was sent
> home early. Additionally, throughout plaintiff's employment with [Universal], he
> was also denied overtime hours. Plaintiff was told he did not have enough
> seniority to get overtime, but individuals outside of plaintiff's race and with less
> seniority then [sic] plaintiff got overtime.

Complaint, pp. 2-3. Based on these allegations, which mirror those in his Charge of

Discrimination, Perry asserts that he "was harassed and discriminated against based on my race,

black, in violation of Title VII of the Civil Rights Act of 1964, as amended." Complaint, Exh. A

(Charge of Discrimination).

Universal moves for summary judgment, insisting that Perry "terminated his employment

from Universal after working there approximately four months. Throughout his employment at

Universal, Plaintiff was not subjected to any harassment or discrimination because of his race.

Plaintiff was also not disciplined or suspended, nor did he have any other adverse employment

action taken against him during his employment at Universal." Defendant's Brief in Support of

Motion for Summary Judgment (ECF No. 48), p. 1. Universal maintains that any adverse employment actions Perry claims to have suffered were not based on race at all; rather, they were the result of nondiscriminatory facts and circumstances–namely that Perry was working another full-time truck driving job at the same time he was driving for Universal.

### II. Standard of Review.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Rogan v. Frazier*, No. 1:15-CV-256, 2019 WL 1282030, at *2 (N.D. Ind. Mar. 20, 2019) (citing *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010)). "'A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact.'" *Id.* (quoting *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011)).

"In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party." *Haynes v. Indiana Univ.*, No. 1:15-CV-01717, 2017 WL 3581634, at *7 (S.D. Ind. Aug. 18, 2017), aff'd, 902 F.3d 724 (7th Cir. 2018) (citing *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996)). "The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) and

*JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996)).

At the summary judgment stage, the court will not "'make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Lane v. Person*, 2021 WL 1108465, at *5 (N.D. Ind., March 22, 2021) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). Summary judgment isn't a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). This Court's task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d at 770. Summary judgment can't be granted if a reasonable factfinder could find in favor of the nonmoving party. *Id*.

**III. Discussion.**

During his 4-month employment as a truck driver for Universal from January to May of 2019, Perry was also working full-time as a truck driver for the United States Postal Service–a job he had held since November of 2018. Perry's daily shift at Universal was from 10:00 p.m. to 6:30 a.m. and his shift at the USPS was from 11:00 a.m. to 7 p.m. Defendant's Memorandum in Support of Motion for Summary Judgment (ECF No. 48), pp. 3-4 (citing Perry Deposition, ECF No. 48-2, pp. 6-7). Since Perry was a commercial truck driver, and Universal was a trucking company, both were subject to the Federal Motor Carrier Safety Administration ("FMCSA") hours of service requirements. *Id*., p. 3 (citing Declaration of Noel Fogwell, ECF No. 48-3).[2] Universal insists that "[u]pon discovering this information and Plaintiff's USPS work schedule, Universal informed Plaintiff that he could not continue to work his full-time schedule at

---

[2] Fogwell was the General Manager of Universal during the time of Perry's employment.

Universal . . . while also working his . . . full-time schedule at the USPS. . . . Universal offered Plaintiff the option to continue working at Universal but on a reduced schedule to allow Universal to comply with the [FMCSA] hours of service requirements while still affording Plaintiff the opportunity to work at Universal." *Id*., pp. 3-4. Accordingly, Universal "informed [Perry] he was being classified as a casual driver which he correctly understood to mean part-time. . . . Accordingly, Plaintiff's status became part-time or 'casual,' meaning that other full-time drivers had priority with shift scheduling and overtime hours. . . . Despite this arrangement, Plaintiff continued to appear for his full-time shift, and his supervisors informed him that he was not permitted to work during this time. . . . Thereafter, in May of 2019, Plaintiff abandoned his position at Universal voluntarily." *Id*., p. 4. Universal also states that Perry "never received any disciplinary action throughout his employment at Universal[]" and that "Universal did not issue him any written documents or other communication that he was terminated from his position at Universal. . . . Plaintiff simply stopped appearing for work at Universal." *Id*. All of these facts are undisputed, except that Perry contends he did not voluntarily quit his job at Universal.

Universal, then, maintains that Perry's hours were reduced because he was working two full-time truck driving jobs and exceeding the number of hours he was allowed to drive under FMCSA regulations. Perry, displeased with this development, continued to show up for a full-time shift at Universal, which he was not permitted to work, and eventually stopped showing up altogether.

In response, Perry maintains that he did *not* quit his job voluntarily and that four other "full-time Universal truck drivers . . . had . . . other jobs as well as at Universal[]" and that "these individuals were three white males and one white female . . . . Universal management was also

aware the [other] drivers had other jobs." Plaintiff's Brief in Opposition (ECF No. 52), p. 4.

Perry also states that a Universal Human Resources employee named Jennifer "was to bring Mr.

Perry paperwork as a 'part-time driver,' but he never received same or signed anything to that

effect. It was to be provided to him for his review. Mr. Perry did not verbally agree to it." *Id.*, p.

3. Perry contends that he "was constantly asked about resigning or be terminated [sic] by

Universal management[]" and that he did not agree or sign to change his job description status,

benefits, or anything else, from full-time to part-time and/or casual driver for Universal." *Id.*, p.

4. Perry also claims that "when Mr. Perry was being hired in, the new hiree's [sic] received a

$10,000.00 bonus. They were all white, as Mr. Perry recall [sic]. He received only ½ of the

bonus." *Id.*, pp. 4-5. Perry also claims that his supervisor, Joshua Yohe, told him "not to return to

Universal after he filed his EEOC charge of discrimination." *Id.*, p. 5. Finally, Perry alleges that

"[t]he last day [he] worked at Universal he was sent home by my supervisor Joshua Yohe (white

male)[]" and that "Universal management did not call Mr. Perry back for work hours. Universal

never contacted him in any fashion after he went home." *Id.*

　　In the case of *Ortiz v. Werner Enters., Inc.*, the Seventh Circuit clarified the standard of

review applicable to employment discrimination cases. Another district court summarized the

Seventh Circuit's holding in *Ortiz* as follows:

> Courts previously spoke of proceeding under an indirect or direct method to
> establish discrimination, but the Seventh Circuit has instructed that instead of
> using such tests, the Court should consider the evidence "as a whole" to determine
> whether it "would permit a reasonable factfinder to conclude that the plaintiff's
> [race, religion, or national origin] caused the [adverse employment action]." *Ortiz
> v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court must
> determine "whether a reasonable factfinder could 'conclude that [Mahran's]
> proscribed factor caused the [adverse employment action].'" *Brown v. DS Servs.
> of Am., Inc.*, 246 F.Supp.3d 1206, 1216 (N.D. Ill. 2017) (quoting *Ortiz*, 834 F.3d

at 765). This does not mean, however, that the Court cannot consider the
traditional burden-shifting test laid out in *McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), under which Mahran
attempts to demonstrate that he has the evidence needed to survive summary
judgment. *Ortiz*, 834 F.3d at 766 (noting that its decision does not overrule
*McDonnell Douglas*). The Court considers the evidence through the *McDonnell
Douglas* framework and then turns to a cumulative review of the evidence to
determine whether a reasonable factfinder could determine that Mahran's religion
or national origin caused the complained-of adverse actions. *See David v. Bd. of
Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

*Mahran v. Advocate Health & Hosps. Corp.*, 2019 WL 952131, at *9 (N.D. Ill. Feb. 26, 2019).

The *McDonnell Douglas* burden-shifting method "allows a plaintiff to establish a *prima

facie* case of discrimination and then rebut a defendant's stated non-discriminatory reason for the

termination." *Rivera v. WestRock Servs. Inc.*, 2018 WL 6528017, at *3 (N.D. Ill. Dec. 12, 2018)

(citing *David*, 846 F.3d at 224). A plaintiff may establish a *prima facie* case by presenting facts

that 1) he belongs to a protected class, 2) he was meeting his employer's legitimate expectations,

3) he suffered an adverse employment action, and 4) his employer treated similarly situated,

younger employees more favorably. *Id*. If a plaintiff does this, then the defendant employer "must

articulate a legitimate, nondiscriminatory reason" for an adverse employment action, "at which

point the burden shifts back" to the plaintiff to submit evidence showing that the employer's

reason is pretextual. *Id*. (quoting *Brown v. DS Services of America, Inc.*, 246 F.Supp.3d 1206,

1217 (N.D. Ill. 2017)). Since the parties in this case employ the burden-shifting method the Court

will do likewise.

Universal argues that Perry cannot establish the third prong of his prima facie case

because he "was not subjected to any adverse employment actions[,]" (Defendant's

Memorandum (ECF No. 48), p. 11), nor can he establish the fourth prong because he "failed to

identify any similarly situated employees who were treated more favorably." *Id.*, p. 13.

### A. Adverse employment action.

As Universal correctly notes in its brief, "[a]n adverse employment action must be one that 'materially alter[s] the terms and conditions of employment.'" *Id.*, p. 11 (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). "Adverse employment actions that are actionable under Title VII include 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.*, p. 12 (quoting *Stutler*, 263 F.3d at 703) (in turn quoting *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 555 (7th Cir. 2001)). Universal insists that "[n]one of the above-mentioned actions occurred here. Plaintiff only received one warning throughout his employment at Universal . . . [and] "this warning was not even of a disciplinary nature. . . . Plaintiff received no other disciplinary action. Plaintiff was not terminated or demoted. He did not have a change in his pay or benefits." *Id.*[3]

Universal's argument on this point is specious. Universal insists that Perry was never disciplined, "terminated or demoted," and had no "change in his pay or benefits" during his employment; therefore he suffered no adverse employment action. In support of this flimsy argument, Universal cites again to the *Stutler* case. Universal explains that "[i]n *Stutler*, the plaintiff was laterally transferred to a new office location and did not like the new position. . . . The Court found that such a lateral transfer is not an adverse employment action. . . . The 7th [sic] Circuit has also determined that such things as '[n]egative performance reviews, a change in job

---

[3] It is undisputed that during his four-month employment with Universal, Perry received a "warning . . . during his 90-day probationary period" as a result of "a weather-related absence[,]" (Defendant's Memorandum, p. 12), but was not otherwise warned, disciplined, or written-up for any workplace violations or transgressions.

title, [or] an increased travel distance to work' do not constitute adverse employment actions." *Id*.

(internal page citations to *Stutler* omitted). Universal then insists that Perry's "job classification

was changed to a part-time casual driver so that Universal could comply with the FMCSA

regulations. Plaintiff was performing the exact same type of work as he was when he was

working the full-time schedule, which is *analogous to a change in job title*." Defendant's Reply

(ECF No. 54), p. 10 (italics added). According to Universal, what happened to Perry was similar

to receiving a new job title, *not* an actionable adverse employment action.

How is having one's hours reduced from full-time to part-time *not* an adverse

employment action? How is losing half of a $10,000 sign-on bonus *not* an adverse employment

action? How is losing the opportunity for overtime *not* an adverse employment action? Perhaps

Universal's argument is that since it had a legitimate, nondiscriminatory reason for changing

Perry's status from full-time to part-time, or because he allegedly agreed to it (a disputed fact,

although an immaterial one), it therefore was not an adverse employment action. But if that is the

basis for this argument, it fails because it conflates the issues. The Court's examination now is

focused on whether Perry can establish the third prong of a prima facie case, not whether

Universal had a nondiscriminatory reason for its action.

Universal does not dispute that Perry's status was changed from full-time to part-time and

that he received half of the sign-on bonus he would have otherwise received had he remained a

full-time driver. In *Bailey v. Brennan*, No. 14-CV-07833, 2016 WL 4493452, at *19 (N.D. Ill.

Aug. 26, 2016), the court found that the plaintiff suffered an adverse employment action when he

was not allowed to work a full day as scheduled and "did not receive a full day's worth of

wages." *See also*, *Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 919 (N.D. Ill. 2011)

(finding that demotion from full-time to part-time constituted adverse employment action where plaintiff suffered lost wages from working fewer hours and lost several vacation days).  "A reduction in work hours may constitute an adverse employment action, where the employee loses wages as a result." *Hernandez-Martinez v. Chipotle Mexican Grill, Inc.*, No. 11-CV-4990, 2012 WL 2721913, at *6 (N.D. Ill. July 9, 2012) (citing *Duncan*, 784 F.Supp.2d at 919); also citing *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) (explaining that actionable employment actions include cases in which an employee's compensation, benefits, or other financial terms of employment are diminished). *McCauley v. Hydrosol, Inc.*, No. 01-CV-1151, 2002 WL 31545882, at *5 (N.D. Ill. Nov. 15, 2002) (Defendant took "two adverse employment actions against [Plaintiff], both when it reduced her to part-time status and when it terminated her."). "Adverse employment actions generally fall into three categories: '(1) termination *or reduction in compensation, fringe benefits, or other financial terms of employment*; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge.'" *Mahran v. Advoc. Health & Hosps. Corp.*, No. 17-CV-5730, 2019 WL 952131, at *10 (N.D. Ill. Feb. 26, 2019) (italics added) (quoting *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-454 (7th Cir. 2011)). Perry has established that he suffered an adverse employment action when he was moved from full-time to part-time. He suffered a reduction in income and lost benefits.

Perry also attempts to establish the third prong of his prima facie case by contending that he was constructively discharged based on his allegation that he was "continually harassed about resigning and threatened to be terminated if he did not resign from one of his jobs." Complaint,

10

p. 2. As another district court explained:

> An employee's constructive discharge can satisfy the adverse employment element and has been recognized in two forms. "The first occurs when a plaintiff resigns due to discriminatory working conditions even more egregious than that required for a hostile work environment claim. . . . The second occurs when an employer acts in a manner that would make clear to a reasonable employee that she will be immediately fired if she does not resign." *Fields* [*v. Bd. of Educ. of City of Chicago*], 928 F.3d [622] at 625 [7th Cir. 2019] (internal citations and quotations omitted). . . . The second form of constructive discharge requires "the plaintiff to show that his working conditions had become intolerable." *Id.* Importantly, "a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Id.* (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 338 F.3d 331, 333 (7th Cir. 2004)).

*Kaniewski v. Roundy's Illinois, LLC*, No. 18-CV-2082, 2019 WL 3554394, at *3 (N.D. Ill. Aug.

5, 2019). Universal contends that Perry fails to establish that he was constructively discharged,

arguing as follows:

> While Plaintiff did not allege in his Complaint that he was terminated, he does allege in paragraph 6 that he was "continually harassed about resigning and threatened to be terminated if he did not resign from one of his jobs." Plaintiff was not constructively discharged. To prove constructive discharge, Plaintiff "must show that [he] was forced to resign because [his] working conditions, from the standpoint of the reasonable employee, had become unbearable." *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). Plaintiff must show "a discriminatory work environment 'even more egregious than the standard for hostile work environment.'" *Id.* at 331-332 (quoting *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)). Further, Plaintiff must demonstrate "that the constructive discharge was motived by discriminatory intent." *Id.* at 333.

> Plaintiff was not constructively discharged but rather voluntarily resigned. There is no evidence in the record which suggests that Plaintiff's working conditions were intolerable or unbearable based on his allegations. Plaintiff has failed to show a discriminatory environment required to claim constructive discharge. Plaintiff has yet to identify any racially harassing comments or statements made to him by any Universal employees. The only comments Plaintiff has identified involve directives by his supervisors as to his work schedule and hours, which were prompted by Universal's compliance with federal trucking regulations. There is no evidence Plaintiff experienced any racially inappropriate or offensive conduct throughout his employment at Universal.

11

Defendant's Memorandum, pp. 12-13. "[W]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, *and the plaintiff-employee resigns*, the employer's conduct may amount to constructive discharge." *Duncan v. Thorek Mem'l Hosp*., 784 F.Supp.2d 910, 921-22 (N.D. Ill. 2011) (italics added) (citing *EEOC v. Univ. of Chi. Hosps*., 276 F.3d 326, 332 (7th Cir. 2002)); also citing *Bragg v. Navistar Int'l Transp. Corp*., 164 F.3d 373, 377 (7th Cir. 1998) ("Constructive discharge exists to give Title VII protection to a plaintiff *who decides to quit* rather than wait around to be fired.") (italics added); *Hunt v. City of Markham, Ill*., 219 F.3d 649, 655 (7th Cir. 2000) ("A person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable.")). This may be what Perry is attempting to argue: that he was "constructively discharged" because Universal told him he could not work two trucking jobs. But here's the rub. Perry insists that he did *not* quit or resign. In fact, he opens his brief in opposition to the motion for summary judgment by expressly stating that he "did not terminate his employment from Universal after working there approximately four (4) months." Plaintiff's Brief, p. 1. He reiterates later in his brief that he "did not voluntarily resign in May 2019[]" and that he "did not leave his employment with Universal voluntarily[.]" *Id*., p. 8. He states that he "was discharged from Universal. To prove constructive discharge, Plaintiff never resigned from Defendant. Plaintiff was discharged. He did not voluntarily resign. Plaintiff has shown a discriminatory environment." *Id*., p. 10. Perry insists that he did not quit or resign and that Universal simply never called him back to work. Perry has, then, pleaded facts

that are inconsistent with constructive discharge by insisting that he never quit. If a plaintiff does not quit or resign, he cannot then claim that he was constructively discharged. Perry is trying to have it both ways by insisting he never quit or resigned while still insisting that he was constructively discharged. Universal contends that it never terminated Perry, but that he simply stopped showing up.

This stalemate creates a disputed fact, but it is immaterial. The Court has already concluded that Perry has established the third prong of his prima facie case even without establishing that he was constructively discharged. Also, the dispute over whether Perry quit or was terminated is immaterial–irrelevant in fact–since Perry concedes that he is not pursuing a wrongful termination claim. "Plaintiff did not allege in his Complaint that he was terminated, he can only plead what is in the EEOC charge of discrimination." Plaintiff's Brief, p. 10.

The Court concludes, based on the undisputed facts of this case and the case law cited above, that Perry establishes the third prong of his prima facie case by showing that he suffered adverse employment actions when his hours and benefits were reduced. In the end, though, this does not save Perry's case, since he fails to establish the fourth prong; that is, he fails to establish that similarly situated white employees were treated more favorably.

### B. Perry has failed to establish that similarly situated employees not in his protected class were treated more favorably.

Perry insists in his Complaint and his affidavit submitted with his response brief that white truck drivers at Universal were treated more favorably, thereby establishing the fourth prong of his prima facie case.  It is not so much what Perry alleges on this point that matters, but rather what he *does not* allege. He alleges that white employees who had other jobs were allowed

to drive full-time for Universal. He *does not* allege, however, that any of those white employees had second jobs *as truck drivers*. This fact is significant because it goes to the heart of two issues: whether Perry can identify similarly situated employees who were treated more favorably; and whether he can refute Universal's proffered nondiscriminatory explanation for its actions. Universal argues that the white employees Perry refers to were *not* similarly situated since none of them had other truck driving jobs while employed at Universal and so did their situations did not give rise to issues involving FMCSA regulations (i.e., the proffered, nondiscriminatory reason Universal says was the basis for changing Perry's status from full-time to part-time).

As Universal explains, the allegedly similarly situated white employees Perry names were not similarly situated at all. Universal argues as follows:

> In employment cases, the plaintiff must show that the similarly situated employees have "the same supervisor, are subject to the same standards, and have engaged in similar conduct." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007) (citation omitted). Plaintiff cannot meet his burden by simply naming other employees, their race, and positions with no other descriptors or details. *See, e.g., Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 723-724 (7th Cir. 2018).

> When asked whether Plaintiff was aware of any other Universal employees with other trucking jobs, Plaintiff testified that he was only aware that Less Hall and Adam Rodgers had second jobs but was unaware of any other Universal employees with a second trucking job. Designation A, Perry Dep. pp. 96:16-97:7. Even in his affidavit Plaintiff failed to designate any evidence as to the nature of these other employees' alleged second jobs. Plaintiff merely asserts that the employees he mentions had the same supervisor as Plaintiff.

Defendant's Reply (ECF No. 54), pp. 11-12. The portions of Perry's deposition and affidavit to which Universal refers include the following:

> Q. Does–in your time at Universal, did you come to know of any situations where there was another driver working for another trucking company other than yourself?

A. I knew of people who had second incomes that weren't necessarily driving. Adam Rogers had a part time he worked [sic]. Less Hall, he and his wife had a business they were operating.

Q. So Adam Rogers–you said he had a part-time job in addition to the Universal job?

A. That's correct.

Q. Do you know what job that was?

A. I do not.

Q. But you cannot give me the name of another Universal employee who had a second trucking job; correct?

A. *There may have been*. *I am unaware*. What I know for certain was I was targeted unfairly. And since we–because we are federal and we were not under the same guidelines, it should not be perceived as another driving job, but just a job.

Perry Deposition (ECF No. 48-1), pp. 16-17 (original page numbers 96-97) (italics added).

Similarly, in his affidavit submitted with his response brief, Perry states as follows:

19. I know of the following other full-time Universal truck drivers who all had their CDL Class A licenses and had other jobs, as well as at Universal: a. Adam Rodgers; b. Jeff Luce; c. Chris Johnson; and d. Less Hall[.] . . . They were full-time drivers for Universal and had the same supervisor as I did.

20. Universal management was also aware the above [d]rivers had other jobs.

Perry Affidavit (ECF No. 52-1), pp. 2-3 (paragraph numbers in original). So, just as Universal contends, Perry cannot identify any other Universal employee who had a second truck driving job–only four employees whom he alleges had other non-truck driving jobs or sources of income. As Universal argues, this is insufficient to establish that similarly situated white employees were treated more favorably:

The standard is clear, however, that the employees must be "directly comparable to [the plaintiff] in all material aspects." *Patterson v. Avery Dennison Corp.*, 281

F.3d 676, 680 (7th Cir. 2002) (citations omitted). In his opposition brief, Plaintiff
states that one of the employees he named "had a part-time non-trucking job and
the other owned a business with his wife." Given these descriptors, Plaintiff
acknowledges that these employees are not similarly situated as neither of them
had a second job working as a truck driver.

Plaintiff has failed to designate any evidence and meet his burden to show that any
of the employees he mentioned, or any Universal employees, were similarly
situated and treated more favorably.

Defendant's Reply (ECF No. 54), p. 12. Universal is correct. Perry has failed to muster any

evidence that any other Universal employee was similarly situated. And, in fact, he testified in

his deposition that he was "unaware" of any such employee. Accordingly, the Court concludes

that Perry fails to establish his prima facie case of race discrimination.

### C. Perry fails to establish an issue of material fact regarding Universal's proffered, nondiscriminatory explanation for its actions.

Universal argues that "[e]ven if this Court finds that Plaintiff 'successfully establishes a

prima facie case' of racial discrimination, Universal is nevertheless entitled to summary

judgment because its actions were 'legitimate, nondiscriminatory reason[s] for its decision

[sic].'" Defendant's Memorandum, pp. 14-15 (quoting *EEOC v. Our Lady of the Resurrection

Medical Ctr.*, 77 F.3d 145, 149 (7th Cir. 1996)). Universal contends as follows:

Universal offered Plaintiff, and Plaintiff accepted, the option of becoming a casual
driver so that he could comply with the FMCSA hours of service regulations,
which is a legitimate, nondiscriminatory reason for doing so. Universal has a duty
to comply with federal hours of service trucking regulations for all of its drivers.
Had Universal not taken such action upon learning of Plaintiff's full-time job at
the USPS, it would have been liable for Plaintiff's violations of federal truck
driving regulations. Universal also could have been potentially liable for any
accidents Plaintiff caused due to fatigue. Moreover, Plaintiff left his employment
with Universal by his own choice; Universal did not terminate his employment
with the company. Therefore, all of Universal's actions were based on legitimate,
non-discriminatory reasons, and there is no evidence that these reasons were
pretextual.

16

*Id*., p. 15.

Again, Universal is correct. Assuming for the sake of argument that Perry could establish a prima facie case, Universal is still entitled to summary judgment because Perry presents no evidence to refute Universal's proffered nondiscriminatory explanation for its decision to move Perry from full-time to part-time. The only arguments Perry attempts to make on this point are that his job with the postal service should not have been considered a second trucking job but rather just a second job, and that during the time he worked as a driver for Universal he was not continually driving.

As to the first argument, Perry insists that "[a]t USPS my position is exempt from Motor Carrier regulations except I must take and pass a physical examination." Perry Affidavit (ECF No. 52-1), p. 3, ¶ 21; Plaintiff's Brief, p. 4. Therefore, argues Perry, his job driving for the Postal Service should have been considered just another source of income rather than a second trucking job. Universal retorts that this argument is a red herring: "Plaintiff further asserts that his position at the United States Postal Service . . . is exempt from the FMCSA. Again, even if the USPS is exempt from compliance, Universal, as a motor carrier, is still obligated to comply with the federal trucking regulations. See 49 C.F.R. § 390.11. It is of no consequence to Universal if the USPS is exempt as Universal is it still obligated to follow the FMCSA regulations." Defendant's Reply, p. 3. Anyway, even if Universal was mistaken in this regard, a mistake does not discrimination make. As this Court has explained, "'[p]retext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.'" *Robert v. City of S. Bend, Indiana*, No. 2:13-CV-274, 2019 WL 5457692, at *3 (N.D. Ind. Oct. 24, 2019) (quoting *Smith v. Chi. Transit Auth*., 806 F.3d 900, 905 (7th Cir. 2015)). "To establish pretext,

the plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the defendant's proffered reasons that a reasonable person could find them unworthy of credence and hence infer that the defendant did not act for the asserted non-discriminatory reasons." *Id*. (citing *Boumedhi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)). "'Summary judgment for the defendant is appropriate if the plaintiff fails to carry his burden to establish a prima facie case or is unable to show a genuine dispute about whether the neutral reason advanced by the employer was merely pretextual.'" *Id*. (citing *Smith*, 806 F.3d at 905). Perry's argument that Universal should have considered his truck driving job with the Postal Service as simply a second job fails to establish that Universal's actions were pretextual.

Perry's second argument is also a red herring. He states in his response brief that "[w]hile working at Universal, he did not spend more then [sic] 2.5 hours per day driving their trucks." Plaintiff's Response, p. 3. He elaborates on this in his affidavit:

> 13. My routes [for Universal] consisted mainly of literally driving back and forth between locations in Roanoke, Indiana.

> 14. The trips were in the same city and state.

> 15. Once I arrived at my drop off point, someone else unloaded the trailer. I waited inside the truck. There were occasions where I deadheaded back to my starting point. On other occasions I had a return load, someone else loaded and unloaded it.

Perry Affidavit (ECF No. 52-1), p. 2. In other words, since Perry was not constantly or continually driving during his workdays at Universal, he implies that he should be excepted from the FMCSA regulations. Universal contends that this argument is bologna:

> Plaintiff acknowledges that he was subject to the Federal Motor Carrier Safety Administration ("FMCSA") hours of service requirements while he was employed at Universal. Plaintiff asserts that his driving at Universal was intrastate and a

total of 28-30 miles per night. He further asserts that he only spent a maximum of 2.5 hours per day driving back and forth between Universal's locations within the same city and state. Plaintiff also asserts that another individual loaded and unloaded the truck while "[h]e waited inside the truck."

Taking all the above-mentioned statements as true, said statements are irrelevant in this case because the FMCSA regulations only differentiate between on duty time and off duty or rest time. See 49 C.F.R. § 395.3. It would be impractical, if not impossible, for carriers like Universal to know the precise times when all its employees are driving versus waiting for a load or unload, and the regulations do not require such accounting for motor carriers such as Universal. Furthermore, Plaintiff has not set forth any evidence to demonstrate that his account of his driving time as alleged in his Response is supported by the FMCSA or any other regulations.

Defendant's Reply, pp. 2-3.

Perry presents no evidence on this point nor any legal authority (such as citing to a portion of the FMCSA regulations, for example) that would support his assertion that not all of the time he worked as a "driver" for Universal should be counted as "driving." Perry presents no evidence whatsoever to refute Universal's explanation that it reduced his hours due to FMCSA regulations. Perry's arguments in opposition to summary judgment are based only on conclusory allegations and unsupported theories. "If [the employer] honestly explain[s] the reasons behind [its] decision, but the decision was ill-informed or ill-considered, [the] explanation is not a "pretext."" *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559 (7th Cir. 1987). "The employee must show that race is the dispositive factor." *Id.* at 561 (citing *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 462 (7th Cir.1986)). Perry has failed to do this.

One final point. In his brief in opposition to summary judgment, Perry states as follows: "Mr. Perry's supervisor Joshua Yohe [who is white] was told not to return to Universal after he filed his EEOC charge of discrimination." Plaintiff's Brief, p. 5. In his affidavit submitted with

19

this brief, Perry repeats that "[m]y supervisor Joshua Yohe was told not to return to Universal after I filed my EEOC charge of discrimination." Perry Affidavit (ECF No. 52-1), p. 3, ¶ 27. These statements are confusing. It is possible that the assertions are just poorly written (as is Perry's brief as a whole) and that Perry meant to state that Yohe told *Perry* not to return after Perry filed an EEOC charge. That would seem to state a claim for retaliation. Universal made the same assumption but argues that the assertion misrepresents the facts and is contrary to Perry's deposition testimony. Universal argues that "Plaintiff now states in his affidavit that his supervisor, Josh Yohe, told him not to return to Universal after Plaintiff filed his EEOC charge of discrimination. In his deposition, Perry testified that Mr. Yohe told him 'not to come back until we called you or not to come back at all.' . . . Plaintiff did not testify that Mr. Yohe told him this <u>after</u> he filed his EEOC charge. [And] Mr. Yohe states he never told Mr. Perry not to return to Universal." Defendant's Reply, p. 8 (citing Yohe Affidavit, ECF No. 54-2, ¶ 6 ("I did not at any time tell Mr. Perry to not return to Universal.")).

Once again, there is a disputed issue here; and once again, it is immaterial. Perry did not assert a claim for retaliation in his Complaint, nor did he file a second EEOC charge in order to pursue such a claim. Notwithstanding his grammatically challenged statements on this point, Perry has not pleaded a claim for retaliation. "If Plaintiff wanted to assert a retaliation claim . . . , the proper approach would have been to raise the issue before the EEOC and in the complaint rather than inappropriately raising the issue for the first time in response to summary judgment." *Curtis v. Earnest Mach. Prod. Co.*, No. 1:11-CV-0951, , at *3 (S.D. Ind. Nov. 20, 2012) (citing *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 443 (7th Cir. 2008)); also citing *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (affirming a decision to disregard a claim

raised for the first time in a response to summary judgment); *Grayson v. ONeill*, 308 F.3d 808,

817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief

in opposition to a motion for summary judgment."); *see also*, *Whitlock v. Williams Lea, Inc.*, No.

16 CV 6347, 2019 WL 1382267, at *5 (N.D. Ill. Mar. 27, 2019) ("In her response brief,

[Plaintiff] raises for the first time a claim that [Defendant] fired her in retaliation for reporting

'protected activity.' . . . Her complaint had no mention of such a claim and does not allege any

facts about her termination. . . . 'A plaintiff may not amend his complaint through arguments in

his brief in opposition to a motion for summary judgment.' *Shanahan v. City of Chicago*, 82 F.3d

776, 781 (7th Cir. 1996). If [Plaintiff] wished to amend her complaint to include a retaliation

claim, her summary judgment brief was neither the time nor place to do so. *Id.*"). Accordingly, if

in fact Perry is attempting to assert a retaliation claim, it fails as a matter of law.

On summary judgment, "[t]he Court considers the evidence through the *McDonnell*

*Douglas* framework and then turns to a cumulative review of the evidence to determine whether

a reasonable factfinder could determine that [Plaintiff's race] caused the complained-of adverse

actions." *Mahran v. Advocate Health & Hosps. Corp.*, 2019 WL 952131, at *9 (N.D. Ill. Feb. 26,

2019) (citing *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir.

2017)). The Court must determine "whether the evidence would permit a reasonable factfinder to

conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the

discharge or other adverse employment action. Evidence must be considered as a whole, rather

than asking whether any particular piece of evidence proves the case by itself[.]" *Ortiz v. Werner*

*Enters., Inc.*, 834 F.3d at 765. "The applicable standard at summary judgment is whether the

evidence would permit a reasonable factfinder to conclude that racial discrimination caused the

21

adverse employment action . . . ." *Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020) (citing *Ortiz*, 834 F.3d at 765).

Perry has failed to present evidence that his race was the reason for the Universal's actions. His only evidence on this point is that other Universal drivers who were white were permitted to have other jobs or sources of income. But for the reasons explained above, none of these other employees were similarly situated to Perry because none of them had second *truck driving* jobs (and so the FMCSA regulations did not come into play). And even assuming Perry could establish the elements of a prima facie case, he fails to present any evidence at all that Universal's proffered nondiscriminatory explanation for its actions was pretextual. He relies instead on conclusory allegations that he was treated unfairly and that his race was the reason. A reasonable jury could not conclude that race was the true motive behind Universal's employment decisions. As Universal puts it, "[e]ven if Plaintiff and Universal had a misunderstanding as to Plaintiff's intentions upon commencing his employment at Universal, it does not change the fact that Universal took the actions it did to comply with the FMCSA regulations." Defendant's Reply, pp. 3-4.

"[A] party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must 'marshal and present the court with the evidence she contends will prove her case.'" *Stanley v. Warden*, No. 3:19-CV-1097, 2021 WL 1390232, at *1 (N.D. Ind. Apr. 13, 2021) (quoting *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010)). "'[I]nferences relying on mere speculation or conjecture will not suffice.'" *Id*. (quoting *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009)). Summary judgment "'is the put up or shut up moment in a lawsuit,'" *id*. (quoting

*Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)), and Perry has failed to meet his burden.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Defendant Universal Dedicated, Inc. (ECF No. 47) is GRANTED.

Date: April 23, 2021.

 /s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana
